**Julia LAKES, Appellant,**

v.

**TEXAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 9754.

Court of Appeals of Texas, Texarkana.

May 16, 1990.

Rehearing Denied June 12, 1990.

Sharon E. Reynerson, Paris, for appellant.

Lewis F. Boyd, Texas Dept. of Human Services, James R. Rodgers, Carol Hammond, Paris, for appellee.

CORNELIUS, Chief Justice.

The District Court of Lamar County rendered judgment terminating the parental rights of Jerry and Julia Lakes to their children, J___ I___, a girl aged five, and J___ A___, a boy aged four, after finding that the parties had knowingly allowed the children to remain in conditions and with persons endangering their physical and emotional well-being. Tex.Fam.Code Ann. § 15.02 (Vernon 1986), *amended by*, ch. 808, § 1, 1989 Tex.Gen.Laws 3673.[1]

Mrs. Lakes appeals the judgment, contending that it is not supported by sufficient evidence and is based partially on evidence outside the record. We overrule these contentions and affirm the judgment.

The children's father, Jerry Lakes, is a fugitive from justice and cannot be located. The mother, Julia Lakes, is a thirty-two-year-old woman with a high school education with minimal job skills. She is unemployed and has been unable to obtain and hold employment for a considerable time. She lives in Paris, Texas, with an individual identified as Tommy (Tiger Joe) Robinson. The Department of Human Services was informed by a local doctor that the girl, J___, had possibly been the victim of sexual abuse. Mrs. Lakes had taken J___ to the doctor for treatment of asthmatic attacks, and had told the doctor that J___ had complained of itching in her genital area. The doctor made an examination of the child and found that, although she did not exhibit symptoms of any sexually transmitted disease, her hymen was considerably dilated. The young girl was interviewed by a Department of Human Services caseworker, who testified that during the interview she had explained to the child

---

1. Tex.Fam.Code Ann. § 15.02 (Vernon 1986), *amended by*, ch. 808, § 1, 1989 Tex.Gen.Laws 3673, provides:

    A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

    (1) the parent has:

    . . . .

    (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

    (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; or

    . . . .

    (K) ... and in addition, the court further finds that

    (2) termination is in the best interest of the child.

the difference between "a good touch and a bad touch" using anatomically correct dolls for demonstration purposes. The child selected a black male doll and indicated to the caseworker that it had done a "bad touch" on her, demonstrating by placing her finger into the vagina of the girl doll. When the caseworker asked the child who had done this to her, she answered, "Tiger Joe." Tiger Joe Robinson is a black male. Mrs. Lakes was informed of the incident, but refused to believe it. On the urging of the Department of Human Services representatives, Mrs. Lakes moved out of Robinson's trailer house for a time, but later moved back in with him. At one point while J___ was at the clinic, she told her mother that Tommy Joe had sexually molested her, and Mrs. Lakes was also told by the police that Tommy Joe had confessed to sexually abusing the child. In spite of this evidence, Mrs. Lakes has refused to disassociate herself from Robinson or remove her children from living with him.

The trial court found, among other things, that the children's father is a fugitive from justice who has had no contact with, and has contributed no support to the children since before February 5, 1988, and also is admitted by Mrs. Lakes to be an unfit person to care for the children; that Mrs. Lakes had been advised by her daughter, by Department of Human Services workers, and by the police that the person with whom she lives, Tiger Joe Robinson, had sexually molested her daughter; that Mrs. Lakes nevertheless refused to move away from Robinson and insisted on staying there with her children; that the conduct of Mrs. Lakes in failing to separate herself and the children from Robinson and the unwholesome atmosphere surrounding them, amounted to knowingly placing and allowing the children to remain in conditions and with a person endangering their physical and emotional well-being; and that the children's best interests required the termination of the parents' parental rights.

■ Clear and convincing evidence that a parent has endangered the children's physical and emotional well-being, as specified in Subsections (1)(D) and (E) of Section 15.02 of the Family Code, is required before a termination of parental rights is authorized. *In Interest of G.M.*, 596 S.W.2d 846 (Tex.1980).

■ We find clear and convincing evidence to support the trial court's determination. Mrs. Lakes knew that her daughter's hymen was enlarged, and that she had suffered irritation in her vaginal area; she was told by her daughter that Tiger Joe had put his finger in her vagina; she had been told by a Department of Human Services caseworker that her daughter had said that Tiger Joe had sexually molested her; and she was aware that Robinson had confessed such activity to the police. She was also aware that Department of Human Services workers had determined that her children displayed behavior consistent with child abuse. In spite of this evidence, Mrs. Lakes refused to remove her children from the dangerous association and environment. Knowingly placing or leaving children with persons known to have sexually abused them is sufficient evidence to justify termination. *In Interest of L.S.*, 748 S.W.2d 571 (Tex.App.–Amarillo 1988, no pet.). The complaint that the evidence is insufficient to prove the requirements of Section 15.02 is overruled.

Mrs. Lakes also contends that the trial court improperly considered certain affidavits not in evidence in making its Finding of Fact No. 4. Finding No. 4 related to conclusions by the Department of Human Services caseworker, Joann Clay, which were based on an interview with Mrs. Lakes' son at a foster home. Even without the facts found in Finding No. 4, there is ample clear and convincing evidence to support the termination order. Thus, any error in considering the affidavits was harmless.

The judgment of the trial court is affirmed.